**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

LEONARD DUSEK,

        Plaintiff,

v.                                **MEMORANDUM OF LAW & ORDER**
                                      Civil File No. 06-3233 (MJD/RLE)

CITY OF MOORHEAD, MINNESOTA,

        Defendant.
_____

Bruce A. Schoenwald, Stefanson Plambeck Foss & Fisher, LLP, Counsel for Plaintiff.

Patricia Y. Beety and Jana M. O'Leary Sullivan, League of Minnesota Cities, Counsel for Defendant.
_____

## I.  INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment. [Docket No. 18] Having received and reviewed all of the parties' submissions regarding this motion, as well as the entire record in this case, the Court concludes that oral argument is unnecessary and will rule on the papers in this matter. Therefore, oral argument, scheduled for Friday, December 7, 2007, is cancelled. Defendant's motion is granted in its entirety.

## II.  BACKGROUND

1

### A. Factual Background

In 1999, Defendant the City of Moorhead ("the City") hired Plaintiff Leonard Dusek as a rental housing inspector. Dusek's direct supervisor at that time was the City's fire chief. On January 1, 2001, the City promoted Dusek to the position of environmental health director. The fire chief continued to supervise Dusek. At that time, Dusek had a part-time assistant who entered his information into the computer and completed his clerical work, including sending his e-mails.

Dusek's duties included creating and implementing an inspection program for establishments such as restaurants and hotels, performing licensing and inspection functions for the Minnesota Departments of Health and Agriculture under the City's contracts, responding to citizen complaints about environmental health issues, preparing and monitoring a budget, and effectively communicating with City departments, other government agencies, contractors, and the general public. He was also required to have the ability to prepare reports and correspondence, maintain records, complete forms, and communicate effectively both verbally and in writing.

In approximately January 2005, the City reorganized its departments, created the Neighborhood Services Division, and moved the environmental health director position into the Neighborhood Services Division. Lisa Vatnsdal became Dusek's direct supervisor, and Dusek no longer had clerical assistance.

Dusek received a performance evaluation from Vatnsdal and the fire chief in April 2005.  The evaluation gave Dusek an unsatisfactory rating for communications and teamwork and instructed that he needed to calendar his appointments in Outlook and keep his supervisor informed of his schedule, improve his teamwork by considering himself a City, rather than a State, employee, participating in human resources meetings and training, and communicating regularly with his supervisor and colleagues.  Dusek agreed to attend technology and Outlook training and work to improve his communication with Vatnsdal.

The City offered City-wide computer training, including a session focused on Outlook, throughout December 2003.  Dusek did not attend because he felt he did not have time and the training was not mandatory.  On March 15, 2005, the City provided Outlook training for Neighborhood Services Division employees, but Dusek did not attend.  On April 8, 2005, Customer Service Manager Tammy Erikstrup met with Dusek to discuss scheduling and Outlook.  Later in April 2005, Erikstrup gave Dusek one-on-one Outlook training.  Again, on May 11, 2005, Erikstrup gave Dusek additional one-on-one Outlook training.  The City IT specialist twice trained Dusek on how to download pictures from a digital camera to a computer.

Despite Vatnsdal's written instructions to Dusek to record in detail his

appointments and inspections on his Outlook calendar, respond to customer and colleague inquiries in a timely manner, document his inspections in detail, and carry his City-issued cellular telephone when he was out of the office during working hours, Dusek failed to do so. On July 6, 2005, Vatnsdal and her supervisor communicated their concerns regarding Dusek to the City's Human Resources Director and the City Manager, Bruce Messelt. On July 19, 2005, Vatnsdal gave Dusek a written reprimand for ongoing unsatisfactory performance.

In response, Dusek acknowledged that he had failed to properly document inspections and files, use Outlook in detail, and utilize e-mail, but he promised to improve. However, Dusek still did not calendar his appointments and detail his activities in Outlook – he testified that he did not have time to do so.

On August 23, 2005, Vatnsdal provided written notice to Dusek that if he did not markedly improve his performance by September 15, 2005, the City would suspend or terminate his employment. On September 21, 2005, Vatnsdal recommended that the City terminate Dusek.

On September 23, 2005, the City provided Dusek notice that a <u>Loudermill</u> hearing had been scheduled for September 30, 2005, because the City was considering terminating his employment.

The <u>Loudermill</u> hearing began on September 30, 2005, and was presided

over by Messelt.  Messelt made the final termination decision.  A court reporter was present and a transcript was later prepared.  Dusek testified in his deposition that he had the opportunity at the hearing to respond to the complaints raised by Vatnsdal and to Messelt's questions.  Messelt agreed to continue the hearing when Dusek stated that he needed time to obtain additional documentation.  The hearing was reconvened on October 5, 2005, and Dusek and his attorney were given the opportunity to present additional evidence and argument.  At the end of the hearing, Messelt took the recommendation for termination under advisement.

On October 6, 2005, the City terminated Dusek's employment effective October 7, 2005.  Dusek was 59 years old.  Messelt submitted findings and conclusions stating three main reasons for termination.  First, Messelt concluded that Dusek had failed to fulfill the essential functions and responsibilities of his position, such as establishing adequate inspection scheduling, reporting, and recording systems; effectively managing time and coordinating assignments to maximize productivity; and accepting supervisory suggestions or taking advantage of training opportunities to improve time management, file documentation, and schedule coordination skills.  Second, Messelt stated that Dusek had failed to accommodate and adapt to City policies and technologies by failing to follow City policies regarding organizational structure, supervisory-subordinate

communications, and utilization of technologies and training; and by failing to properly use City technologies and software, including the e-mail and calendar functions of Outlook, a digital camera, a laptop computer, Rapid Report software, and a field printer necessary for real-time electronic field reporting.  Third, Messelt found that Dusek had demonstrated clear insubordination and disrespect for his employer, supervisors, colleagues, and citizen customers by failing to timely respond to citizen complaints, assignments, and other inquiries; failing to work as part of a team; failing to acknowledge the City and not the State as his sole employer; and failing to demonstrate accountability and efficiency commensurate with the autonomy and independence of his position.

The City then hired a younger female in her mid-forties to fill Dusek's position.

After Dusek was terminated, he applied for unemployment benefits.  The City provided information regarding its termination decision to the Minnesota Department of Employment and Economic Development ("MDEED").  MDEED rejected Dusek's application and found that the termination decision was supported because Dusek engaged in employment misconduct.

**B.     Procedural Background**

On August 4, 2006, Dusek filed a Complaint against the City alleging 1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA")

and the Minnesota Human Rights Act ("MHRA"), both on the basis of disparate treatment and disparate impact; 2) gender discrimination in violation of Title VII and the MHRA on the basis of disparate treatment; 3) <u>Loudermill</u> due process violations; and 4) retaliation.  The City has filed for summary judgment on all counts.

### III.   DISCUSSION

#### A.   Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  <u>Celotex</u>, 477 U.S. at 323.  Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion." <u>Crawford v. Runyon</u>, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

#### B.   Age Discrimination and Sex Discrimination Disparate Treatment Claims

##### 1.   Legal Standard

When there is no direct evidence of age or sex discrimination, the Court analyzes disparate treatment claims under the <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), burden-shifting framework.  <u>Holland v. Sam's Club</u>, 487 F.3d

641, 644 (8th Cir. 2007).  The Court applies

> this analysis in both the ADEA and the Title VII contexts.  Under the burden-shifting framework, [the plaintiff] must establish the elements of a prima facie case: (1) that she is within the protected class of people; (2) that she was qualified to perform her job; (3) that her employment was terminated; and (4) after her dismissal, she was replaced by someone younger (ADEA) or of the opposite gender (sex discrimination under Title VII) [or other facts exist that give rise to an inference of discrimination].  If [the plaintiff] establishes a prima facie case, a rebuttable presumption of discrimination arises and the burden of production shifts to [the defendant] to articulate a legitimate, nondiscriminatory reason for terminating her.  Once [the defendant] produces such a reason, the presumption disappears and [the plaintiff] bears the burden of proving that [the defendant's] proffered reason was pretextual and the real reason for her discharge was discrimination.

Hill v. St. Louis Univ., 123 F.3d 1114, 1119 (8th Cir. 1997) (citations and footnote omitted); see also Holland, 487 F.3d at 644.  The same analysis applies to Dusek's MHRA age and sex discrimination claims.  Hoover v. Norwest Private Mortgage Banking, 632 N.W.2d 534, 542 (Minn. 2001); Sigurdson v. Isanti County, 386 N.W.2d 715, 719-20 (Minn. 1986).  A plaintiff can satisfy the fourth prong by demonstrating that he was replaced by a person outside the protected class.  Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 (8th Cir. 1994).

    **2.**    **Prima Facie Case**

The City admits that Dusek was a member of a protected class because he was over the age of forty and male and that the City terminated his employment.  For the purposes of its summary judgment motion, the City does not dispute that

Dusek was qualified for his position. Dusek also meets the fourth prong of the prima facie case because he was replaced with a younger female employee.

### 3. Legitimate Nondiscriminatory Reason for Termination

The City asserts that it terminated Dusek's employment because he failed to perform the essential functions of his job, failed to adapt to City policies and technologies, and demonstrated insubordination and disrespect for his employer supervisors, colleagues, and citizens. These reasons are based on a host of behavior, including failing to carry his City-issued cellular phone when he was out of the office so that his supervisor and/or coworkers could reach him, failing to demonstrate improved computer skills, particularly Outlook, despite individualized training, failing to timely respond to citizen complaints, assignments, and other inquiries, and failing to acknowledge the City, and not the State, as his sole employer and Vatnsdal as his only direct supervisor.

Poor performance is a legitimate nondiscriminatory reason for termination. Johnson v. Baptist Med. Ctr., 97 F.3d 1070, 1073 (8th Cir. 1996). Additionally, "cases have repeatedly held that insubordination and violation of company policy are legitimate reasons for termination." Putman v. Unity Health Sys., 348 F.3d 732, 736 (8th Cir. 2003) (citation omitted). Thus, the City has met its burden of articulating a legitimate, non-discriminatory reason for terminated Dusek's employment.

### 4. Pretext

The mere fact that the Dusek was replaced with an employee outside the protected classes – a younger female employee – is not sufficient to show pretext. See Thomas v. Corwin, 483 F.3d 516, 529 (8th Cir. 2007) (holding that when plaintiff's only evidence of pretext was that her replacement was younger, employer was entitled to summary judgment on age discrimination claim); Nelson v. J.C. Penney Co., Inc., 75 F.3d 343, 346 (8th Cir. 1996) (holding that replacement with younger employee is "a fact is consistent with age discrimination, but it cannot alone support a reasonable inference of it").

Besides noting the age and sex of his replacement, Dusek points to no other relevant evidence that sex or age motivated the City's decision to terminate him. Dusek admits that he is only speculating that sex or age motivated the City's termination decision. (Dusek Dep. 132-33, 137.) The fact that the City imposed new computer proficiency requirements is not sufficient because there is no evidence that these requirements were only imposed on Dusek or were not imposed on employees outside the protected class. Moreover, the technology requirements were legitimate requirements for Dusek's job, which required communication, scheduling, and time management, and the City provided Dusek with extensive training opportunities to assist him in complying with its requirements.

### C.     Disparate Impact Age Discrimination Claims

Dusek also asserts a disparate impact age discrimination claim against the City on the grounds that its requirement that he use certain technology, particularly Outlook, tended to discriminate against older workers.

> A plaintiff in a disparate impact case must first establish a prima facie case of disparate impact by identifying a specific employment practice and then presenting statistical evidence of a kind and degree sufficient to show that the practice in question caused the plaintiff to suffer adverse employment action because of his or her membership in a protected group.  If the plaintiff succeeds in making this prima facie showing, the burden then shifts to the employer to produce evidence demonstrating a legitimate business reason for the challenged practice.  If the employer successfully establishes a business justification, the plaintiff may still prevail by demonstrating that a comparably effective alternative practice would produce a significantly smaller adverse impact on the protected class.

Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 953-54 (8th Cir. 2001) (citations and footnote omitted) (stating test for both ADEA and MHRA age discrimination disparate impact claims).

Dusek provides absolutely no evidence to support his assertion that the City's technology requirements have a disparate impact on older workers, male workers, or older male workers.  He also ignores that the City offered group technology training, which Dusek failed to take advantage of, and then provided one-on-one training to Dusek in order to assist him.  In fact, Dusek's argument, that older workers are "technology immigrants," unable to adapt to new technology or complete their jobs without an assistant, is insulting.  The Sixth

11

Circuit has addressed this very argument:

> In a sense, every technological advancement appears to favor the young, but only if one presupposes that older workers are more resistant to change and are adverse to learning new methods; ironically, this is the very type of ageist stereotype that the ADEA was enacted to address. . . . We decline this invitation to hold that requiring computer skills for a promotion is alone sufficient to create a prima facie case of age discrimination.

Hartsel v. Keys, 87 F.3d 795, 802 (6th Cir. 1996).  This Court agrees.  Dusek's disparate impact claim is baseless and summary judgment is granted for the City on this claim.

### D. Loudermill Claim

Dusek asserts that his due process rights were violated because the City provided inadequate notice of his termination hearing, failed to supply an impartial decisionmaker, and did not provide an adequate post-termination hearing opportunity after an inadequate pre-termination hearing.

#### 1. Legal Standard

> The minimum acceptable scope of a pre-termination name-clearing is dictated by the Supreme Court's decision in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).  Consistent with Loudermill, this Court has held that a pre-termination hearing need not be elaborate.  To the contrary, all that is required is that the employee have notice of the charges . . . , an explanation of the employer's evidence, and an opportunity [for the employee] to present his side of the story.  Thus, for instance, an informal meeting[ ] with supervisors may constitute a sufficient pre-termination hearing.

Winskowski v. City of Stephen, 442 F.3d 1107, 1110 (8th Cir. 2006) (citations

omitted).

## 2. Adequacy of <u>Loudermill</u> Notice

Dusek asserts that the <u>Loudermill</u> notice was inadequate because it did not specifically mention insubordination as a ground for termination, but Messelt listed insubordination as one of the grounds for termination. Dusek asserts that no mention of insubordination occurred before Messelt's October 6, 2005 termination notice. Thus, Dusek concludes that the <u>Loudermill</u> notice was inadequate because it did not adequately advise Dusek that he was being accused of insubordination.

The Court concludes that Dusek received adequate notice. Messelt's finding of insubordination was based on Dusek's failure to work in a team environment and to maintain effective working relationships with employees and supervisors. The finding was also based on Dusek's claim that he was a State employee instead of a City employee and on Dusek's failure to respond to citizen complaints in a timely fashion and failure to prioritize work assignments. Finally, Messelt's insubordination finding was based on Dusek's statement that he needed autonomy but failed to have acceptable standards for accountability, efficiency, and supervision. One week before the <u>Loudermill</u> hearing, the City provided Dusek with written notice of the hearing. The written notice stated, "you are not communicating effectively with Ms. Vatnsdal, or others, and are not

demonstrating that you accept participation as part of the City of Moorhead team." The notice also noted that Dusek experienced time management difficulties and problems responding to customers in a timely manner. The notice stated that Dusek failed to keep accurate records, record time off properly, or communicate with his team and supervisor, and that Vatnsdal felt that Dusek would not perform without close monitoring.

The written <u>Loudermill</u> notice provided specific notice of all of the factors upon which Messelt based his conclusion that Dusek demonstrated insubordination. One week notice before the hearing is sufficient. <u>Winskowski v. City of Stephen</u>, 442 F.3d at 1110. In fact, a public employer complies with <u>Loudermill</u> by simply giving oral notice of the charges against the employee face-to-face at the <u>Loudermill</u> hearing. <u>Coleman v. Reed</u>, 147 F.3d 751, 754 (8th Cir. 1998). The evidence against Dusek was discussed at the September 30 hearing and he had the opportunity to respond to the allegations both at the September 30 hearing and again when the hearing was reconvened on October 5.

### 3.     Adequacy of Decisionmaker

Dusek asserts that the arbiter of a <u>Loudermill</u> proceeding must be an impartial decisionmaker. He asserts that Messelt was not impartial as demonstrated by the type and extent of questions he asked Dusek during the <u>Loudermill</u> proceedings. Additionally, Dusek claims, that Messelt stated his own

reasons for terminating Dusek in his notice of termination.

The Court has reviewed the Loudermill transcript and concludes that Messelt's questioning and commentary during the hearing do not indicate bias. Additionally, the reasons that Messelt provided for terminating Dusek were all indicated in the Loudermill notice and explored at the hearing. None of Dusek's "allegations comes close to overcoming 'the presumption of honesty and integrity' that applies in determining whether due process required a different decision-maker." Peterson v. County of Dakota, Minn., 479 F.3d 555, 560 n.2 (8th Cir. 2007) (quoting Hortonville Jt. Sch. Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 497 (1976)).

#### 4.   Adequacy of Loudermill Hearing

Dusek asserts that the Loudermill hearing was not an adequate hearing because he did not have the right to obtain testimony under oath or cross examine witnesses. Thus, he asserts he was entitled to a post-termination hearing.

There is no absolute requirement that an employer permit an employee to confront or cross examine witnesses, or take testimony under oath. See Peterson v. County of Dakota, Minn., 479 F.3d 555, 560 (8th Cir. 2007) (rejecting plaintiff's claim that Loudermill hearing was inadequate because there was "no meaningful post-termination proceeding at which she could cross examine the police officers

and present evidence supporting her position"). In this case, Dusek had one week notice of the hearing; the hearing occurred over two days; Dusek was represented by counsel on both days of hearings; Dusek admits that he had an opportunity to respond to all the charges and complaints made about his performance at the hearing before a final decision was made; and a court reporter was present to record the proceedings. When Dusek asked to gather and present additional evidence, the hearing was recessed to enable him to do so. Dusek has not provided evidence of particular testimony he sought to obtain under oath or cross examination he sought to conduct. The Court concludes that the <u>Loudermill</u> hearing the City provided was adequate and thorough.

At the conclusion of the <u>Loudermill</u> hearing, Messelt discussed the possibility of a post-termination administrative hearing with Dusek. There is no evidence that Dusek sought any post-termination hearing or attempted to take advantage of any available state administrative remedy. The Court rejects Dusek's claim that the City failed to provide adequate post-termination procedures.

### E.     Retaliation

Dusek asserts that the City retaliated against him for asserting the age discrimination and sex discrimination claims by pressuring him to resign before it terminated his employment and by making a finding of insubordination in order to successfully contest his unemployment benefits. Dusek also concludes that the

City added the insubordination finding in order to retaliate against Dusek for failing to give up his due process rights by resigning and for refusing to drop his discrimination claims.

Because there is no direct evidence of a retaliatory motive, the Court analyzes Dusek's retaliation claims under McDonnell Douglas Corp. v. Green:

> Under this framework, the initial burden is on the plaintiff to establish a prima facie case, consisting of evidence: (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a non retaliatory reason for the adverse employment action. If the defendant can show a legitimate, non-retaliatory reason for its actions, the burden returns to the plaintiff who is then obliged to present evidence that (1) creates a question of fact as to whether [defendant's] reason was pretextual and (2) creates a reasonable inference that [defendant] acted in retaliation.

Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1043 (8th Cir. 2007) (citations omitted).

Dusek has failed to identify any causal connection between Dusek's assertion of sex and age discrimination claims or assertion of his Loudermill hearing rights and the City's finding of insubordination and the State's subsequent denial of unemployment benefits. During his deposition, he testified that he has only "speculation" to support his claim. (Dusek Dep. 137.) In contesting his application for unemployment benefits, the City simply provided documentation of its reasons for terminating Dusek. MDEED reviewed Dusek's application and

decided that he was disqualified because the weight of the evidence supported the City's stated termination explanation.   There is simply no evidence in the record from which a reasonable juror could find that the City retaliated against Dusek for pursuing his discrimination claims or exercising his due process rights under <u>Loudermill</u> by alleging insubordination and opposing his unemployment benefits application.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment [Docket No. 18] is **GRANTED** and this case is **DISMISSED WITH PREJUDICE.**

2. Oral argument scheduled for December 7, 2007 is **CANCELLED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 6, 2007                        <u>s / Michael J. Davis            </u>
                                               Judge Michael J. Davis
                                               United States District Court